Jonathan Shub (SBN #237708)
Kevin Laukaitis*
**SHUB LAW FIRM LLC**
134 Kings Hwy E 2nd Floor
Haddonfield, NJ 08033
Tel: (856) 772-7200
Email: jshub@shublawyers.com
         klaukaitis@shublawyers.com

*Attorneys for Plaintiff and the Proposed Classes*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK GLINOGA, individually and on behalf of all others similarly situated, | Civil Action |
| Plaintiff, | No.:_____ |
| v. | **CLASS ACTION COMPLAINT** |
| ROBINHOOD MARKETS, INC.; ROBINHOOD CRYPTO, LLC; ROBINHOOD FINANCIAL LLC; and ROBINHOOD SECURITIES, LLC. | **JURY TRIAL DEMANDED** |
| Defendants. | |

## <u>CLASS ACTION COMPLAINT</u>

Plaintiff Mark Glinoga ("Plaintiff"), through his undersigned attorneys,

Shub Law Firm LLC, brings this Class Action Complaint against Defendants

Robinhood Markets, Inc; Robinhood Crypto, LLC; Robinhood Financial, LLC;

and Robinhood Securities, LLC (collectively, "Defendants" or "Robinhood"),

**CLASS ACTION COMPLAINT**

individually and on behalf of all others similarly situated, and complains and alleges upon personal knowledge as to himself and his own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by his attorneys:

## NATURE OF THE ACTION

1. This is a class action brought individually by Plaintiff on behalf of consumers who are users of Defendants' mobile app, "Robinhood," known for commission-free stock-trading, exchange-traded funds, and cryptocurrencies.

2. This class action arises out of the recent cyberattack and data breach that was perpetrated against Robinhood (the "Data Breach"). The Data Breach resulted in unauthorized access and exfiltration of sensitive and personal identifiable information (the "PII") of approximately 7 million Robinhood users, including Plaintiff (the "Class Members"). As a result, affected Class Members are vulnerable to present injury and damages in the form of identity theft, out-of-pocket expenses and the value of time reasonably incurred to remedy or mitigate the effects if the unauthorized access, exfiltration, and subsequent criminal misuse of the Private Information.

3. The PII compromised in the Data Breach includes email addresses, full names, and for a smaller portion of users, date of birth, ZIP code, and more

extensive account details.[1] Two days after Robinhood announced the Data Breach, user 'pompompurin' posted on a hacking forum offering to sell the 7 million Robinhood customers' stolen email addresses and 2 million full names.[2] Stolen email addresses are especially popular tools for hackers to further target users with phishing attacks and steal more sensitive data.

4. Plaintiff brings this class action lawsuit on behalf of those similarly situated to address Defendants' inadequate safeguarding of Class Members' Private Information that is collected and maintained.

5. The mechanism of cyberattack and potential for improper disclosure of Plaintiff's and Class Members' PII was a known risk to Defendants, and thus Defendants were on notice that failing to take steps necessary to secure the PII from the risk of ransomware attack.

6. Plaintiff's and Class Members' PII are now at considerable risk because of Defendants' negligent conduct since the PII that Robinhood collected and maintained is now in the hand of data thieves.

---

[1] https://www.cnbc.com/2021/11/09/robinhood-data-breach-involved-7-million-clients-protect-your-credit.html. Last Accessed Dec. 1, 2021.
[2] https://www.bleepingcomputer.com/news/security/7-million-robinhood-user-email-addresses-for-sale-on-hacker-forum/. Last Accessed Dec. 1, 2021.

**CLASS ACTION COMPLAINT**

7. Plaintiff's and Class Members' PII was compromised due to Defendants' negligent and/or careless act and omissions and their failure to adequately protect the PII of their current, for, and prospective clients.

8. As a result of the Data Breach, Plaintiff and Class Members are exposed to a heightened present and imminent risk of fraud and identity theft. As a result of Defendants' actions and inactions, as set forth herein, Plaintiff and Class Members must now and in the future closely monitor their information to guard against identity theft, among other issues.

9. Plaintiff and Class Members have and may in the future incur actual monetary costs, including but not limited to the cost of purchasing credit monitoring services, credit freezes, credit reports or other protective measures to deter and detect identity theft.

10. Plaintiff seeks to remedy these harms on behalf of himself and all similarly situated individuals whose PII was accessed during the Data Breach.

11. Accordingly, Plaintiff brings this action on behalf of all persons whose PII was compromised as a result of Defendants' negligence and failure to: (i) adequately protect their customers' PII; (ii) warn their current, former, and potential customers of their inadequate information security practices; and (iii) effectively monitor their data systems for security vulnerabilities and incidents. Defendants'

**CLASS ACTION COMPLAINT**

conduct amounts to negligence and violates federal and state statutes as invoked below.

12. Plaintiff seeks remedies including, but not limited to, compensatory damages, reimbursement of out-of-pocket costs, and injunctive relief including improvements to Defendants' data security systems, future annual audits, and adequate credit monitoring services funded by Defendants.

## JURISDICTION AND VENUE

13. This Court has original jurisdiction over this controversy pursuant to 28 U.S.C. § 1332(d). The amount in controversy in this class action exceeds $5,000,000, exclusive of interest and costs, and there are numerous Class members who are citizens of states other than Defendants' states of citizenship.

14. This Court has personal jurisdiction over Defendants in this matter. The acts and omissions giving rise to this action occurred in the state of California. Defendants have been afforded due process because they have, at all times relevant to this matter, individually or through their agents, subsidiaries, officers and/or representatives, operated, conducted, engaged in and carried on a business venture in this state and/or maintained an office or agency in this state, and/or marketed, advertised, distributed and/or sold products, committed a statutory violation within this state related to the allegations made herein, and caused injuries to Plaintiffs and putative Class Members, which arose out of the acts and omissions that occurred in

the state of California, during the relevant time period, at which time Defendants were engaged in business activities in the state of California.

15. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and (c) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District and because Defendants transact business and/or have agents within this District and have intentionally availed themselves of the laws and markets within this district.

## INTRADISTRICT ASSIGNMENT

16. Pursuant to Civil Local Rule 3-2(c-d), a substantial part of the events giving rise to the claims herein arose in San Mateo County, California, and these actions should be assigned to either the San Francisco Division or the Oakland Division.

## PARTIES

17. Plaintiff Mark Glinoga is a citizen of California who resides in Los Angeles, California. Plaintiff Glinoga has been a Robinhood customer for approximately four (4) years. On November 8, 2021, Glinoga received an email and app notification from Defendants informing Glinoga that his PII had been stolen.

18. Defendant Robinhood Markets, Inc., is a publicly traded corporation organized under the laws of the State of Delaware, with a principal place of business at 85 Willow Road, Menlo Park, CA 94025. Defendant Robinhood Markets, Inc.

**CLASS ACTION COMPLAINT**

advertises its services and sells products to customers nationwide through its website as well as through its mobile application. Its website can be found at the robinhood.com URL, which is registered to Robinhood Markets, Inc. with a California address.[3]

19.     Defendant Robinhood Crypto, LLC is a limited liability company organized under the laws of the State of Delaware, with a principal place of business at 85 Willow Road, Menlo Park, CA 94025. Defendant Robinhood Crypto, LLC is a wholly-owned subsidiary of Defendant Robinhood Markets, Inc.

20.     Defendant Robinhood Securities, LLC is a limited liability company organized under the laws of the State of Delaware, with a principal place of business at 85 Willow Road, Menlo Park, CA 94025. Defendant Robinhood Securities, LLC is a wholly-owned subsidiary of Defendant Robinhood Markets, Inc.

21.     Defendant Robinhood Financial LLC is a limited liability company organized under the laws of the State of Delaware, with a principal place of business at 85 Willow Road, Menlo Park, CA 94025. Defendant Robinhood Financial LLC is a whole-owned subsidiary of Defendant Robinhood Markets, Inc.

---

[3] *See* https://www.whois.com/whois/robinhood.com. (last visited on Dec. 1, 2021).

**CLASS ACTION COMPLAINT**

# FACTUAL ALLEGATIONS

## The Value of Personally Identifiable Information

22.    PII, or personal identifiable information, is data that can be used to detect a specific individual. PII includes name, address, email, telephone number, date of birth, passport number, credit/debit card number, social security number, and more.

23.    It is important to keep PII safe, especially in digital form. PII stored on a computer, phone, or website can be vulnerable to cybercriminals. If a criminal is fraudulently using a user's information, she can become a victim of fraud, identity theft, and/or phishing attacks.

24.    Data Breaches have become so notorious that the Federal Bureau of Investigation ("FBI") and U.S. Secret Service have issued a warning to potential targets, so they are aware of, and prepared for, a potential attack. Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known and completely foreseeable to the public and to anyone in Defendants' industry, including Defendants.

25.    According to the Federal Trade Commission ("FTC"), identity theft wreaks havoc on consumers' finances, credit history, and reputation and can take

time, money, and patience to resolve.[4] Identity thieves use stolen personal information for a variety of crimes, including government benefits fraud, phone or utilities fraud, and bank and finance fraud.[5]

**Robinhood's Privacy Policy**

26. Robinhood is a financial services company that allows its more than 31 million customers to trade stocks, exchange-traded funds, and cryptocurrencies through its website and mobile app.

27. Robinhood's website provides consumers with a privacy policy[6] that informs them what PII will be collected and how that PII will be used when they are using Robinhood's services or even communicating with them, known as the "Privacy Policy."

---

[4] *See* Taking Charge, What to Do If Your Identity is Stolen, FTC, 3 (Apr. 2013), https://dss.mo.gov/cd/older-youth-program/files/taking-charge-what-to-do-if-identity-is-stolen.pdf (last visited Dec. 1, 2021).

[5] *Id*. The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." 16 CFR § 603.2. The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, social security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number." See Taking Charge, What to Do If Your Identity is Stolen, FTC, 3 (Apr. 2013), https://dss.mo.gov/cd/older-youth-program/files/taking-charge-what-to-do-if-identity-is-stolen.pdf (last visited Aug. 24, 2021).

[6] https://robinhood.com/us/en/support/articles/privacy-policy/ (last accessed Dec. 1, 2021)

9

CLASS ACTION COMPLAINT

28.     The Privacy Policy states that, in the ordinary course of doing business with its customers, among other things, Robinhood collects from its customers, among other things:

    a.  "Identity data", such as the customer's name, date of birth, marital status, social security number, biometric identifiers, and other data from government-issued identification documents;

    b.  "Contact data", such as mail addresses, mailing addresses, and telephone numbers;

    c.  "Financial Data", such as bank account and payment card details, information about income, account balances, financial transaction history, credit history, tax information, and credit scores;

    d.  "Profile Data", such as usernames and passwords, among other things; and

    e.  "Stored content," including photos and contacts stored on mobile devices and in email accounts.[7]

29.     Relating to California customers, such as the Plaintiff, the Privacy Policy states the following: "In the last 12 months, we collected the following

---

[7] Note: with regard to "Stored Content", Robinhood states affirmatively that it only collects this information "with [the customer's] permission. This disclaimer is not present on any of the other information categories.

**CLASS ACTION COMPLAINT**

categories of personal information subject to the [California Consumer Privacy Act]: identifiers (such as email address and IP address), approximate geolocation information, Internet or other electronic network activity information (such as browsing history and related usage data), and inference from your interactions with out platform."

30.     In its Privacy Policy, Robinhood promises not to disclose customers' information except for the following instances: (1) to authorized third-party vendors and service providers, (2) to companies in which customers' hold securities; (3) to Robinhood affiliates; (4) during substantial corporate transactions; (5) for legal purposes; or (6) with customers' consent.

31.     Robinhood's website also promises customers that it employs "a number of industry-standard measures to protect your account and ensure your experience with us is safe and secure."[8]

## **Robinhood's Data Breach**

32.     On or about November 8, 2021, Robinhood disclosed on its website and via email to affected users that on November 3, 2021, it was the subject of a data breach affecting over seven million customers.[9]

---

[8] https://robinhood.com/us/en/support/articles/how-youre-protected/ (last accessed Dec. 1, 2021).
[9] https://blog.robinhood.com/news/2021/11/8/data-security-incident (last accessed Dec. 1, 2021).

**CLASS ACTION COMPLAINT**

33.     The PII accessed in the Data Breach is believed to include customer's full names, email addresses, ZIP codes, date of births, phone numbers, and other undisclosed information.

34.     At least three hundred people also had more extensive account details revealed to the unauthorized parties.

35.     On November 16, 2021, Robinhood released an additional statement with more details about the Data Breach, verifying that the hack did occur and approximately how many customers were affected.

36.     Shortly after this hack – and its disclosure – the PII of exposed Robinhood customers was listed for sale on the dark web. The seller represented the information as "highly profitable in the right hands" and expected the price for the information to be at least "five figures."[10]

37.     As disclosed by Robinhood, and the purported "seller of the information", the PII of Plaintiffs and Class Members was taken by hackers to engage in identity theft and/or to sell it to criminals who will purchase the Private Information for that purpose. The fraudulent activity resulting from the Data Breach may not come to light for years.

**Defendants Were Aware of the Risks of a Data Breach**

---

[10] https://www.securityweek.com/fbi-hacker-offers-sell-data-allegedly-stolen-robinhood-breach (last accessed Dec. 1, 2021).

**CLASS ACTION COMPLAINT**

38.     Defendants had obligations created by contract, industry standards, common law, and representations made by Plaintiff and Members of the Class to keep their PII confidential and to protect it from unauthorized access and disclosure.

39.     Plaintiff and Class Members provided their PII to Defendants with the reasonable expectation and mutual understanding that Defendants would comply with its obligations to keep such information confidential and secure from unauthorized access.

40.     Defendants' data security obligations were particularly important given the substantial increase in cyber-attacks and/or data breaches preceding the date of the breach, the scope of which was widely known and completely foreseeable to the public and to anyone in Defendants' industry, including Defendants.

41.     It is no secret that data breaches have become widespread. For example, the United States saw 1,244 data breaches in 2018 and had 446.5 million exposed records.[11]

42.     Defendants clearly understood this reality because of this quote, posted on Defendants' website prior to the Data Breach:[12]

> The reliability of our platform takes precedence over all else, so that we can be there for our customers when they need us the most. We relentlessly protect our customers' security and privacy, and

---

[11] 98 Must-Know Data Breach Statistics for 2021, Varonis, https://blogvaronis2.wpengine.com/data-breach-statistics/ (last visited Dec. 1, 2021).
[12] https://web.archive.org/web/20210701234009/https://robinhood.com/us/en/about-us/. Last accessed Dec. 1, 2021.

**CLASS ACTION COMPLAINT**

we only share with our counterparties what they need to fulfill our customers' financial needs, nothing more. We build safeguards and provide education so that our customers are in the best position to succeed. We have high quality timely customer support, and when things aren't right, we fix them. We work closely with regulators and lawmakers to protect our customers and the broader financial system. We speak simply, plainly, and truthfully, even if it's not what others want to hear. We hold ourselves and our colleagues to the highest ethical standards.[13]

43.    However, Robinhood failed to take fully implement data security systems and protect critical PII belonging to users.

44.    Defendants knew, or reasonably should have known, of the importance of safeguarding the PII of Plaintiff and Members of the Classes, including email addresses, and of the foreseeable consequences that would occur if Defendants' data security systems were breached, including specifically, the significant costs that would be imposed on Plaintiff and Class Members because of the breach.

45.    Indeed, Defendants show knowledge of the importance of safeguarding user PII based on its Privacy Policy, which discloses that Robinhood collects, among other items, users' names, date of birth, marital status, Social Security number, email, address, phone number, bank account information, credit history, and other sensitive PII. In the Privacy Policy, Robinhood promises not to disclose customers'

---

[13] https://robinhood.com/us/en/about-us/. Last Accessed Dec. 1, 2021.

**CLASS ACTION COMPLAINT**

information except to third-party vendors, companies which users hold securities, Robinhood affiliates, for legal purposes, or with customers, consent.

46.     Despite this Privacy Policy, Robinhood failed to safeguard customer PII during the Data Breach, leaving Plaintiff and Class Members vulnerable to further cyber-attack in the future.

47.     Plaintiff and Class Members now face years of constant surveillance of their personal records, monitoring, and loss of rights. The Class Members are incurring and will continue to incur such damages in addition to any fraudulent use of their PII.

48.     The injuries to Plaintiff and Class Members were directly and proximately caused by Defendants' failure to implement or maintain adequate data security measures for the PII of Plaintiff and Class Members.

**Defendants Failed to Comply with FTC Security Guidelines on Storing and Protecting PII**

49.     The Federal Trade Commission ("FTC") has created numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

50.     In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established cyber-security guidelines for

businesses. The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to back the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the even of a breach.

51.     The FTC further recommends that companies not maintain Private Information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitory for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

52.     The FTC has brought enforcement actions against businesses for failing to protect consumer data adequately and reasonably, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C § 45. Orders resulting from

**CLASS ACTION COMPLAINT**

these actions further clarify the measures businesses must take to meet their data security obligations.

53.     Defendants failed to properly implement basic data security practices, and their failure to employ reasonable and appropriate measures to protect against unauthorized access to consumer Private Information constitutes an unfair act or practice by Section 5 of the FTCA, 15 U.S.C § 45. 67. Defendants were at all times fully aware of their obligations to protect the PII of current, former, and prospective users. Defendants were also aware of the significant repercussions that would result from their failure to do so.

## **Defendants Failed to Comply with Industry Standards**

54.     A number of industry and best practices have been published and should have been used as go-to resources and authoritative guides when developing Defendants' cybersecurity practices.

55.     Best cybersecurity practices that are standard in Defendants' industry include encrypting files; installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; and training staff regarding critical points.

**CLASS ACTION COMPLAINT**

56. Defendants failed to meet the minimum standards of the following cybersecurity frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC- 1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are established standards in reasonable cybersecurity readiness.

57. These foregoing frameworks are existing and applicable industry standards in Defendants' industry, and Defendants failed to comply with these accepted standards, thereby opening the door to the cyberattack and subsequent Data Breach.

### **Plaintiff and Class Members Have Suffered Harm and Are at an Increased Risk of Fraud and Identity Theft as a Result of the Data Breach**

58. Due to the Data Breach, Plaintiff and Class members have suffered and will continue to suffer harm.

59. Shortly after the Data Breach, Plaintiff Glinoga started receiving spam emails about investing from email addresses he did not recognize. Plaintiff Glinoga also started receiving texts about loans from unknown numbers. Plaintiff Glinoga is very concerned about the indefinite amount of additional phishing attacks he will

endure in the future, as well as other fraudulent activity in his accounts resulting from the Data Breach.

60.    Plaintiff and Class members face an increased risk of identity theft, phishing attacks, and related cybercrimes because of the Data Breach. Those impacted are under heightened and prolonged anxiety, as they will be at risk for falling victim to cybercrimes for years to come.

61.    As a result of the Data Breach, at least one unidentified cybercriminal possesses the PII of Plaintiff and Class Members. As reported by bleepingcomputer.com, user "pompompurin" posted in a hacker forum that they were selling the stolen Robinhood user data for "at least five figures."[14] The post, pictured below, contains photographic proof of the user gaining access to the Robinhood user data.

---

[14] https://www.bleepingcomputer.com/news/security/7-million-robinhood-user-email-addresses-for-sale-on-hacker-forum/. Last Accessed on Dec. 1, 2021.

**CLASS ACTION COMPLAINT**

👑 **pompompurin**

November 10, 2021 at 05:07 AM This post was last modified: November 11, 2021 at 11:16 PM by pompompurin. Edited 7 times in total. **#1**

Robinhood

I know you've all heard of it already, https://blog.robinhood.com/news/2021/11/...y-incident.
As you should already assume robinhood did lie, this was not all that was taken, IDs were also
downloaded from sendsafely (Not for sale)
Can either contact me via Wikr (@ ⬛⬛⬛⬛⬛ ) or Telegram (https://t.me/ ⬛⬛⬛⬛⬛ )

**no lowball offers**
**EDIT: Minimum I'm looking for is 5 Figures. Don't message me if you're going to offer less. I've
gotten quite a lot of messages, so please hit me up on Wikr if you're a serious buyer. Thanks.**
this is highly profitable if in the right hands
*The 310 Users is not for sale at this current point in time. All the other data is.

For people asking, here is proof of me gaining access. Watermarks are over the image to avoid
people stealing and trying to claim credit. https://ibb.co/album/ ⬛⬛⬛⬛

aaaaaaaaaaaaaaaaaaaaaaa
aaaaaaaaaaaaaa

| Posts | 1,172 |
| Threads | 90 |
| Joined | Oct 2020 |
| Reputation | 5,046 |

62.     Now that the data is stolen and up for sale, unidentified actors can exploit the PII for their own gain or continue to sell the data for a profit. Stolen email addresses linked to financial accounts such as Robinhood are particularly problematic, as they can be used by cybercriminals in targeted phishing attacks to steal more sensitive data. If more sensitive information like social security numbers is stolen, cybercriminals can destroy Plaintiff's and Class Members' credit scores through taking out loans and opening new bank accounts. This damages any future legitimate attempts to borrow money, obtain credit, or open a financial account.

63.     The PII obtained during the Data Breach is highly valuable to cybercriminals for the aforementioned reasons.

64.     In response to the Data Breach, Robinhood emailed affected users and offered "helpful tips for keeping your account and information safe," which included

**CLASS ACTION COMPLAINT**

only engaging with verified Robinhood social media, reporting suspected phishing scams to a designated Robinhood email, and enabling two-factor authentication on their Robinhood account. However, these tips are not enough to effectively guard oneself against sophisticated phishing scams. It also puts the burden on the affected user to watch their Robinhood account and email for suspicious activity. Cybercriminals will often wait months or years after obtaining PII to use it, which means that Plaintiff and Class Members will have to diligently monitor their accounts years in the future in order to ensure their PII obtained in the Data Breach is not used to harm them.

## CLASS ACTION ALLEGATIONS

65. Plaintiff brings this nationwide class action pursuant to Rule 23 of the federal Rules of Civil Procedure on behalf of himself and all members of the following class:

> All current, former, and prospective Robinhood users residing in the United States whose Private Information was compromised in the Data Breach announced by the Defendants on or about November 8, 2021 (the "**Nationwide Class**").

66. Plaintiff also brings this class action individually and on behalf of all people in California as follows:

> All current, former, and prospective Robinhood users residing in the California whose Private Information was compromised in the Data Breach announced by the

Defendants on or about November 8, 2021 (the "**California Subclass**").

67. The California Subclass is referred to herein as the "California Subclass" and together with the Nationwide Class, are collectively referred to herein as the "Classes."

68. Excluded from the Classes are: (1) Defendants, and any entity in which Defendants have a controlling interest or which have a controlling interest in Defendants; (2) Defendants' legal representatives, assigns and successors; and (3) the judge(s) to whom this case is assigned and any member of the judge's immediate family.

69. Plaintiff reserves the right to redefine the Class(es), and/or requests for relief.

70. Each of the proposed classes meet the criteria for certification under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3).

71. <u>Numerosity.</u> The Class Members are so numerous that joinder of all members is impracticable. While the exact number of Class Members is unknown, based on information and belief, the Class consists of millions of Robinhood customers whose Private Information was compromised in the Data Breach.

72. <u>Commonality.</u> There are questions of law and fact common to the Class, which predominate over any question affecting only individual Class Members.

Common questions of law and fact that affect Class members include, but are not limited to:

    a.  Whether the Defendants engaged in conduct alleged herein;

    b.  Whether Defendants' conduct violated the state consumer protection laws invoked below;

    c.  Whether Defendants violated Cal. Civ. Code § 1798.100, *et seq*.;

    d.  When Defendants learned of the Data Breach and whether the response was adequate;

    e.  Whether Defendants had a legal duty to adequately protect Plaintiff's and Class Members' PII;

    f.  Whether Defendants breached their legal duty by adequately failing to protect Plaintiff's and Class Members' PII;

    g.  Whether Defendants implemented and maintained reasonable security procedures and practices appropriate to the nature of storing Plaintiff's and Class Members' PII;

    h.  Whether Defendants knew or should have known that they did not employ reasonable measures to keep Plaintiff's and the Class Members' PII secure and prevent loss or misuse of that PII;

    i.  Whether Defendants adequately addressed and fixed the vulnerabilities which permitted the data breach to occur;

    j.  Whether Plaintiff and the Class Members are entitled to recover actual damages and/or statutory damages;

    k.  Whether Plaintiff and the other Class Members are entitled to additional credit or identity monitoring beyond what the company is offering and are entitled to other monetary relief; and

l. Whether Plaintiff and the Class Members are entitled to equitable relief, including injunctive relief, restitution, disgorgement, and/or the establishment of a constructive trust.

73. <u>Typicality.</u> Plaintiff's claims are typical of the other Class Members because all members had PII compromised in the Data Breach and were harmed as a result.

74. <u>Adequacy of Representation.</u> Plaintiff will fairly and adequately represent and protect the interests of the Classes. Plaintiff has no interests that conflict with the interests of the Classes he seeks to represent. Plaintiff's Counsel are competent and experienced in data breach class action litigation.

75. <u>Superiority.</u> A class action is superior to other available means of fair and efficient adjudication of the claims of Plaintiff and the Classes. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of complex and expensive litigation. It would be very difficult, if not impossible, for members of the Class individually to effectively redress Defendants' wrongdoing. Even if Class members could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments.

76. Class certification is also appropriate under Rule 23(a) and (b)(2) because Defendants acted or refused to act on grounds generally applicable to the Classes, so that final injunctive relief or corresponding declaratory relief is

appropriate as to the Nationwide Class as a whole and/or as to the California Subclass as a whole.

## CAUSES OF ACTION

### COUNT I
### Negligence
### (On behalf of the Plaintiff and the Nationwide Class)

77.    Plaintiff restates and realleges all proceeding allegations above and hereafter as if fully set forth herein.

78.    Robinhood solicited and gathered PII of Plaintiff and the Nationwide Class to facilitate sales transactions.

79.    Robinhood knew, or should have known, of the risks inherent in collecting the PII of Plaintiff and the Class Members and the importance of adequate security. On information and belief, Robinhood received warnings that hackers routinely attempted to access and acquire PII without authorization. Robinhood also knew or should have known about numerous, well-publicized data breaches involving other financial services companies.

80.    Robinhood owed duties of care to Plaintiff and the Class Members whose PII was entrusted to it. Robinhood's duties included the following:

a.  To exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting and protecting PII in its possession;

**CLASS ACTION COMPLAINT**

b. To protect customers' PII using reasonable and adequate security procedures and systems that are compliant with the industry standards; and

c. To implement processes to quickly detect a data breach and to timely act on warnings about data breaches.

81. By collecting PII data, and using it for commercial gain, Robinhood had a duty of care to use reasonable means to secure and safeguard its computer property, to prevent disclosure of the PII, and to safeguard the PII from theft.

82. Because Robinhood knew that a breach of its systems would damage thousands of its customers, including Plaintiff and the Class Members, it had a duty to adequately protect their PII.

83. Robinhood owed a duty of care not to subject Plaintiff and the Class Members to an unreasonable risk of harm because they were foreseeable and probably victims of any inadequate security practices.

84. Robinhood knew, or should have known, that its systems did not adequately safeguard the PII of Plaintiff and the Class Members.

85. Robinhood breached its duties of care by failing to provide, or by acting with reckless disregard for fair, reasonable, or adequate computer systems and data security practices to safeguard the PII of Plaintiff and the Class Members.

**CLASS ACTION COMPLAINT**

86. Robinhood had a special relationship with Plaintiff and the Class Members. Plaintiff's and the Class Members' willingness to entrust Robinhood with their PII was predicated on the understanding that Robinhood would take adequate security precautions. Moreover, only Robinhood had the ability to protect its systems (and the PII that it stored on them) from attack.

87. Robinhood's own conduct also created a foreseeable risk of harm to Plaintiff and the Class Members and their PII. Robinhood's misconduct included failing to:

    a. Secure its customer support systems;

    b. Secure access to its servers;

    c. Comply with industry standard security practices;

    d. Employ adequate network segmentation;

    e. Implement adequate system and event monitoring;

    f. Install updated and patches in a timely manner; and

    g. Implement the systems, policies, and procedures necessary to prevent this type of data breach.

88. Robinhood also had independent duties under state laws that required it to reasonable safeguard Plaintiff's and the Class Members' PII.

89. Robinhood breached the duties it owed to Plaintiff and the Class Members in numerous ways, including:

a. By creating a foreseeable risk of harm through the misconduct previously described;

b. By failing to implement adequate security systems, protocols and practices sufficient to protect PII both before and after learning of the data breach; and

c. By failing to comply with the minimum industry data security standards during the period of the data breach.

90.     But for Robinhood's wrongful and negligent breach of the duties it owed Plaintiff and the Class Members, their PII either would not have been compromised or they would have been able to prevent some or all of their damages. As a direct and proximate result of Robinhood's negligent conduct, Plaintiff and the Class Members have suffered damages and are at imminent risk of further harm.

91.     The injury and harm that Plaintiff and the Class Members suffered (as alleged above) was reasonably foreseeable.

92.     The injury and harm that Plaintiff and the Class Members suffered (as alleged above) was the direct and proximate result of Robinhood's negligent conduct.

93.     Plaintiff and the Class Members have suffered injury and are entitled to damages in an amount to be proven at trial.

**CLASS ACTION COMPLAINT**

## COUNT II
## Breach of Contract
## (On Behalf of Plaintiff and the Nationwide Class)

94.    Plaintiff restates and realleges all proceeding allegations above and hereafter as if fully set forth herein.

95.    When Plaintiff and the Class Members provided their PII to Robinhood to create their accounts on its website, they entered into contracts by which Robinhood agreed to protect their PII in accordance with its Privacy Policy.

96.    Robinhood solicited and invited its customers, including Plaintiff and the Nationwide Class, to provide their PII and open their trading accounts on its website using their PII.

97.    An explicit part of the offer, as stated in its Privacy Policy, was that Robinhood would safeguard the PII using reasonable or industry-standard means.

98.    Robinhood also affirmatively represented on its website and in its Privacy Policy that it protected the PII of Plaintiff and the Nationwide Class in several ways, as described above.

99.    Based on Robinhood's representations, Plaintiff and the Nationwide Class accepted the offers and provided Robinhood with their PII when they opened their accounts with Robinhood.

100.   Robinhood entered into binding contracts with Plaintiff that included a contractual obligation to reasonably protect Plaintiff's and the Class Members' PII through, among other things, its Privacy Policy.

101.   In entering into such contracts, Plaintiff and the Class Members reasonable believed and expected that Robinhood's data security practices complied with relevant laws and regulations and were consistent with industry standards.

102.   Plaintiff and Class Members would not have provided their PII to Robinhood and they known that Robinhood would not safeguard their PII as promised.

103.   Plaintiff and Class Members fully performed their obligations under the contracts with Robinhood.

104.   Robinhood breached the contracts by failing to safeguard Plaintiff's and the Class Members' PII.

105.   The losses and damages Plaintiff and the Class Members sustained (as described above) were the direct and proximate result of Robinhood's breaches of its contracts with them.

106.   Plaintiff and the Class Members also are entitled to injunctive relief requiring Robinhood to, among other things, strengthen its data security systems and monitoring procedures, conduct periodic audits of those systems, and provide

lifetime credit monitoring and identity theft insurance to Plaintiffs and the Class Members.

## COUNT III
### Breach of Implied Contract
### (On Behalf of Plaintiff and the Nationwide Class)

107.    Plaintiff restates and realleges all proceeding allegations above and hereafter as if fully set forth herein.

108.    When Plaintiff and the Class Members provided their PII to Robinhood to create their accounts on its website, they entered into contracts by which Robinhood agreed to protect their PII in accordance with its Privacy Policy.

109.    Robinhood solicited and invited its customers, including Plaintiff and the Nationwide Class, to provide their PII and open their trading accounts on its website using their PII.

110.    An implicit part of the offer was that Robinhood would safeguard the PII using reasonable or industry-standard means.

111.    Robinhood also affirmatively represented on its website and in its Privacy Policy that it protected the PII of Plaintiff and the Class in several ways, as described above.

112.    Based on the implicit understanding and also on Robinhood's representations, Plaintiff and the Nationwide Class accepted the offers and

**CLASS ACTION COMPLAINT**

provided Robinhood with their PII when they opened their accounts with Robinhood.

113. Robinhood manifested its intent to enter into an implied contract that included a contractual obligation to reasonably protect Plaintiff's and the Class Members' PII through, among other things, its Privacy Policy.

114. In entering into such implied contracts, Plaintiff and the Class Members reasonably believed and expected that Robinhood's data security practices complied with relevant laws and regulations and were consistent with industry standards.

115. Plaintiff and the Class Members would not have provided their PII to Robinhood had they known that Robinhood would not safeguard their PII as promised.

116. Plaintiff and the Class Members fully performed their obligations under the implied contracts with Robinhood.

117. Robinhood breached the implied contracts by failing to safeguard Plaintiff's and the Class Members' PII.

118. The losses and damages Plaintiff and the Class Members sustained (as described above) were the direct and proximate result of Robinhood's breaches of its implied contracts with them.

119. Plaintiff and the Class Members also are entitled to injunctive relief requiring Robinhood to, among other things, strengthen its data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiff and the Class Members.

### COUNT IV
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Nationwide Class)**

120. Plaintiff restates and realleges all proceeding allegations above and hereafter as if fully set forth herein.

121. This count is plead in the alternative to Count II above.

122. Plaintiff and members of the Nationwide Class conferred a monetary benefit on Robinhood. Specifically, they purchased financial products through Robinhood and paid fees to Robinhood.

123. Robinhood knew they Plaintiff and the Class conferred a benefit on Robinhood. Robinhood profited from their purchased and used their PII for its own business purposes.

124. The monies for goods and services that Plaintiff and the Class Members paid to Robinhood were to be used by Robinhood, in part, to pay for the administrative costs of reasonable data privacy and security practices and procedures.

**CLASS ACTION COMPLAINT**

125. Robinhood failed to secure the Plaintiff's and the Class Members' PII, and therefore, it was unjustly enriched by the trading accounts Plaintiff and the Class Members opened with Robinhood, that they would not have opened had they known that Robinhood did not keep their personal information secure.

126. Plaintiff and the Nationwide Class have no adequate remedy at law.

127. Under the circumstances, it would be unjust for Robinhood to be permitted to retain any of the benefits that Plaintiff and the Class Members conferred on it.

128. Robinhood should be compelled to disgorge into a common fund or constructive trust for the benefit of Plaintiff and the Class Members proceeds that it unjustly received from them. In the alternative, Robinhood should be compelled to refund the amounts that Plaintiff and the Nationwide Class overpaid.

## COUNT V
### Declaratory Judgment
### (On Behalf of Plaintiff and the Nationwide Class)

129. Plaintiff restates and realleges all preceding allegations above and hereafter as if fully set forth herein.

130. Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad

**CLASS ACTION COMPLAINT**

authority to restrain acts, such as here, that are tortious and violate the terms of the federal and state statutes described in this Complaint.

131. Robinhood owes duties of care to Plaintiff and the Class Members which required it to adequately secure PII.

132. Robinhood still possesses PII regarding Plaintiff and the Class Members.

133. Plaintiff alleges that Robinhood's data security measures remain inadequate. Robinhood publicly denies these allegations. Furthermore, Plaintiff continues to suffer injury as a result of the compromise of his PII and remains at imminent risk that further compromises of their PII will occur in the future.

134. Under its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

    a. Robinhood owes a legal duty to secure consumers' PII under the common law and Section 5 of the FTC Act;

    b. Robinhood's existing security measures do not comply with its explicitly or implicit contractual obligations and duties of care to provide reasonable security procedures and practices appropriate to the nature of the information to protect consumer's PII;

    c. Robinhood continues to breach this legal duty by failing to employ reasonable measures to secure consumers' PII;

d.  To comply with its explicit or implicit contractual obligations and
    duties of care, Robinhood must implement and maintain reasonable
    security measures, including, but not limited to:

    i.   Engaging third-party security auditors/penetration testers as
         well as internal security personnel to conduct testing, including
         simulated attacks, penetration tests, and audits on Robinhood's
         systems on a periodic basis, and ordering Robinhood to
         promptly correct any problems or issues detected by such third-
         party security auditors;

    ii.  Engaging third-party security auditory and internal personnel to
         run automated security monitoring;

    iii. Auditing, testing, and training its security personnel regarding
         any new or modified procedures;

    iv.  Segmenting its user applications by, among other things,
         creating firewalls and access controls so that if one area is
         compromised, hackers cannot gain access to other portions of
         Robinhood's systems;

    v.   Conducting regular database scanning and security checks;

    vi.  Routinely and continually conducting internal training and
         education to inform internal security personnel how to identify

and contain a breach when it occurs and what to do in response
to a breach;

vii. Purchasing credit monitoring services for Plaintiff and the Class
Members for a period of ten years; and

viii. Meaningfully educating its users about the threats they face as a
result of the loss of their PII to third parties, as well as the steps
Robinhood's customers must take to protect themselves.

135. This Court also should issue corresponding prospective injunctive
relief requiring Robinhood to employ adequate security protocols consistent with
law and industry standards to protect consumers' PII.

136. If an injunction is not issued, Plaintiff will suffer irreparable injury,
and lack an adequate legal remedy, in the event of another data breach at
Robinhood. The risk of another such breach is real, immediate, and substantial. If
another breach at Robinhood occurs, Plaintiff will not have an adequate remedy at
law because many of the resulting injuries are not readily quantifiable.

137. The hardship to Plaintiff if an injunction does not issue exceeds the
hardship to Robinhood if an injunction is used. Plaintiff will likely be subjected to
substantial identity theft and other damage. On the other hand, the cost to
Robinhood of complying with an injunction by employing reasonable prospective

data security measures is relatively minimal, and Robinhood has a pre-existing

legal obligation to employ such measures.

138.    Issuance of the requested injunction will not disserve the public

interest. To the contrary, such an injunction would benefit the public by preventing

another data breach at Robinhood, thus eliminating the additional injuries that

would result to Plaintiffs and consumers whose PII would be further compromised.

## COUNT VI
### Violation of California Unfair Competition Law
### CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ.*
### (On behalf of Plaintiff and the California Subclass)

139.    Plaintiff restates and realleges all preceding allegations above and

hereafter as if fully set forth herein.

140.    Robinhood is a "person" as defined by Cal. Bus. & Prof. Code § 17201.

141.    Robinhood violated Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL")

by engaging in unlawful, unfair, and deceptive business acts and practices.

142.    Robinhood's unlawful, unfair acts and deceptive acts and practices

include:

      a.    Robinhood failed to implement and maintain reasonable security

          measures to protect Plaintiff and the California Subclass Members

          from unauthorized disclosure, release, data breaches, and theft, which

          was a direct and proximate cause of the Data Breach;

b. Robinhood failed to:

    i. Secure its e-commerce website;

    ii. Secure access to its servers;

    iii. Comply with industry standard security practices;

    iv. Follow the PCI-DSS standards;

    v. Encrypt PCD at the point-of-sale and during transit;

    vi. Employ adequate network segmentation;

    vii. Implement adequate system and event monitoring;

    viii. Utilize modern payment systems that provided more security against intrusion;

    ix. Install updates and patches in a timely manner; and

    x. Implement the systems, policies, and procedures necessary to prevent this type of Data Breach.

c. Robinhood failed to identify foreseeable security risks, remediate identified security risks, and adequately improve security. This conduct, with little if any utility, is unfair when weighed against the harm to Plaintiff and the California Subclass Members whose PII has been compromised;

d. Robinhood's failure to implement and maintain reasonable security measures also was contrary to legislatively declared

**CLASS ACTION COMPLAINT**

public policy that seeks to protect consumer data and ensure that entities that are trusted with it use appropriate security measures. These policies are reflected in laws, including the FTC Act, 15 U.S.C. § 45, California's Consumer Records Act, Cal. Civ. Code §§ 1798.81.5 *et seq.*, and California's Consumer Privacy Act, Cal. Civ. Code §§ 1798.100 *et seq.*;

e. Robinhood's failure to implement and maintain reasonable security measures also lead to substantial injuries, as described above, that are not outweighed by any countervailing benefits to consumers or competition. Moreover, because Plaintiff and the California Subclass Members could not know of Robinhood's inadequate security and compromise of its e- commerce site, consumers could not have reasonably avoided the harms that Robinhood caused;

f. Misrepresenting that it would protect the privacy and confidentiality of Plaintiff's and the California Subclass Members' PII, including by implementing and maintaining reasonable security measures;

g. Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and the California Subclass Members' PII, including duties imposed by

the FTC Act, 15 U.S.C § 45; California's Customer Records Act, Cal. Civ. Code §§ 1798.80, *et seq.*; and California's Consumer Privacy Act, Cal. Civ. Code §§ 1798.100 *et seq.*;

h.  Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff's and the California Subclass Members' PII;

i.  Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and the California Subclass Members' PII, including duties imposed by the FTC Act, 15 U.S.C § 45; California's Customer Records Act, Cal. Civ. Code §§ 1798.80, *et seq.*; and California's Consumer Privacy Act, Cal. Civ. Code §§ 1798.100 *et seq.*;

j.  Engaging in unlawful business practices by violating Cal. Civ.6 Code § 1798.82; and

k.  Among other ways to be discovered and proved at trial.

143.  Robinhood's representations and omissions to Plaintiff's and the California Subclass Members were material because they were likely to deceive reasonable consumers about the adequacy of Robinhood's data security and ability to protect the privacy of consumers' PII.

144. Robinhood intended to mislead Plaintiff and the California Subclass Members and induce them to rely on its misrepresentations and omissions.

145. Had Robinhood disclosed to Plaintiff and the California Subclass Members that its data systems were not secure and, thus, vulnerable to attack, Robinhood would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. Instead, Robinhood received, maintained, and compiled Plaintiff's and the California Subclass Members' PII as part of the services and goods Robinhood provided without advising Plaintiff and the California Subclass Members that Robinhood's data security practices were insufficient to maintain the safety and confidentiality of Plaintiff and the California Subclass Members. Accordingly, Plaintiff and the California Subclass Members acted reasonably in relying on Robinhood's misrepresentations and omissions, the truth of which they could not have discovered.

146. Robinhood acted intentionally, knowingly, and maliciously to violate California's Unfair Competition Law, and recklessly disregarded Plaintiff's and the California Subclass Members' rights.

147. As a direct and proximate result of Robinhood's unfair, unlawful, and fraudulent acts and practices, Plaintiff and the California Subclass Members have suffered and will continue to suffer injury, ascertainable losses of money or

property, and monetary and non-monetary damages as described herein and as will be proved at trial.

148. Plaintiff and the California Subclass Members seek all monetary and non-monetary relief allowed by law, including restitution of all profits stemming from Robinhood's unfair, unlawful, and fraudulent business practices or use of their PII; declaratory relief; injunctive relief; reasonable attorneys' fees and costs under California Code of Civil Procedure § 1021.5; and other appropriate equitable relief.

149. Plaintiff and California Class Members are also entitled to injunctive relief requiring Robinhood to, e.g., (a) strengthen its data security systems and monitoring procedures; (b) submit to future annual audits of those systems and monitoring procedures; and (c) continue to provide adequate credit monitoring to all California Class Members.

## COUNT VII

### VIOLATIONS OF CALIFORNIA'S CONSUMER PRIVACY ACT
### Cal. Civ. Code § 1798.100, et seq.
### (On Behalf of Plaintiff and the California Subclass)

150. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

151. This count is brought on behalf of the California Subclass.

152. Through the above-detailed conduct, Defendant violated California's Consumer Privacy Act ("CCPA") by subjecting the nonencrypted and nonredacted PII of Plaintiff and Class members to unauthorized access and exfiltration, theft, or disclosure as a result of Defendant's violation of its duty to implement and maintain reasonable security procedures and practices appropriate to the nature and protection of that information. Cal. Civ. Code § 1798.150(a).

153. In accordance with Cal. Civ. Code § 1798.150(b), concurrently with the filing of this Complaint, Plaintiff's counsel will serve Defendant with notice of these CCPA violations.

154. On behalf of Class members, Plaintiff seeks injunctive relief in the form of an order enjoining Defendant from continuing to violate the CCPA. If Defendant fails to respond to Plaintiff's notice letter or agree to rectify the violations detailed above, Plaintiff will amend this Complaint and seek actual, punitive, and statutory damages, restitution, attorneys' fees and costs, and any other relief the Court deems proper as a result of Defendant's CCPA violations.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Classes described above, seeks the following relief:

**CLASS ACTION COMPLAINT**

a. An order certifying this action as a class action under Fed. R. Civ. P. 23, defining the classes as requested herein, appointing the undersigned as Class Counsel, and finding that Plaintiff is a proper representative of the Classes requested herein;

b. Judgment in favor of Plaintiff and the Class Members awarding them appropriate monetary relief, including actual damages, statutory damages, equitable relief, restitution, disgorgement, and statutory costs;

c. An order providing injunctive and other equitable relief as necessary to protect the interests of the Classes as requested herein;

d. An order instructing Robinhood to purchase or provide funds for credit monitoring services for Plaintiff and all Class Members;

e. An order requiring Robinhood to pay the costs involved in notifying the Class Members about the judgment and administering the claims process;

f. A judgment in favor of Plaintiff and the Classes awarding them pre-judgment and post judgment interest, reasonable attorneys' fees, costs, and expenses as allowable by law, and

g. An award of such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: December 1, 2021

Respectfully Submitted,

By: */s/ Jonathan Shub*
Jonathan Shub (SBN #237708)
Kevin Laukaitis*
**SHUB LAW FIRM LLC**
134 Kings Hwy E., Fl. 2
Haddonfield, NJ 08033
T: (756) 772-7200
jshub@shublawyers.com
klaukaitis@shublawyers.com

*Pro Hac Vice* application forthcoming

*Attorneys for Plaintiff and the Proposed
Classes*

**CLASS ACTION COMPLAINT**